UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BUDD REESE,<br><br>              Plaintiff,<br><br>     v.<br><br>ROBERT FOXFULKER, *et al.*,<br><br>              Defendants. | Case No. 2:17-cv-01627-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 53] |

This case involves a civil rights action filed by Plaintiff Budd Reese ("Reese") against Defendants Romeo Aranas ("Aranas") and Robert Faulkner ("Faulkner")[2] (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 53, 55, 58.)[3] On May 27, 2021, the Court gave Reese notice of Defendants' motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). (ECF No. 57.) Despite the Court *sua sponte* granting an extension of time for Reese to file an opposition to Defendants' motion, (ECF No. 60), Reese has failed to file an opposition to the motion. For the reasons stated below, the Court recommends Defendants' motion, (ECF No. 53), be granted.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Reese is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Lovelock Correctional Center

---

[1]  This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]  Faulkner was erroneously named as "Robert Foxfulker" in the complaint. (*See* ECF No. 53.)

[3]  ECF No. 55 consists of documents filed under seal in support of the motion for summary judgment. ECF No. 58 is an erratum containing declarations supporting the exhibits pertaining to Defendants' motion for summary judgment.

("LCC"). (ECF Nos. 5, 7.) On June 8, 2017, proceeding *pro se*, Reese filed an inmate civil rights complaint pursuant to 42 U.S.C. § 1983, ("Complaint"), seeking injunctive relief and monetary damages for events that occurred while Reese was incarcerated at the High Desert State Prison ("HDSP"). (ECF No. 7.) In accordance with 28 U.S.C. § 1915A(a), the District Court screened Reese's Complaint on May 24, 2018. (ECF No. 6.) The Court allowed Reese to proceed on one claim for Eighth Amendment deliberate indifference to serious medical needs, and dismissed, without prejudice, but without leave to amend, a state law claim for medical malpractice. (*Id.*)

Reese's Complaint alleges in 2014, Reese tested positive for Hepatitis C ("Hep C") in prison. (ECF No. 7 at 3.) Prison officials told Reese that they had enrolled him into the "chronic clinic." (*Id.*) Prison officials did not do any further testing on Reese and did not speak to him about treatment. (*Id.*) Later, Reese had another blood test. (*Id.*) Prison officials told Reese that "his liver was not bad enough for treatment" and that "he would be refused treatment unless he [agrees] to wait until his condition is more serious." (*Id.*) Prison officials told Reese he had to wait until his "viral load" dropped below a certain number before they would treat his condition. (*Id.*)

Reese also alleges the "Director of Nursing, [Faulkner], through deliberate indifference, has failed to see that [Reese] is provided with proper care, and has interfered with [Reese's] treatment for a serious medical need" thus causing further damage to Reese's liver. (*Id.* at 4.) Additionally, Reese alleges the "Director of Medical, [Aranas],[4] has a custom and policy of refusing and failing to provide medical care to an inmate until the after effect of a serious medical condition, by delaying treatment." (*Id.*)

The following facts are undisputed. First, Reese was given a blood test by Defendants in 2014 and tested positive for Hep C. (ECF Nos. 7, 27.) After testing positive for Hep C, Reese was enrolled in the NDOC's Chronic Care Clinic. (*Id.*) Thereafter, Reese was given additional testing, at which point, medical staff determined Reese did not

---

[4] Romeo Aranas is no longer employed as the Medical Director for the NDOC. (ECF 27.)

2

qualify for the Hep C Direct Acting Anti-viral ("DAA") treatment. (*Id.*)

On May 26, 2021, Defendants filed their motion for summary judgment. (ECF No. 53.) Defendants assert they are entitled to summary judgment because: (1) Reese has failed to fully exhaust his administrative remedies; (2) Reese was treated appropriately and in accordance with the medical directives and standards of care; (3) Reese has not been harmed by the alleged lack of treatment; (4) Aranas was not Reese's treating physician and therefore did not personally participate in any alleged constitutional violation; and (5) Defendants are entitled to qualified immunity. (*Id.*)

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements,

speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving party must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its

contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

**III. DISCUSSION**

    **A.    Civil Rights Claims under 42 U.S.C. § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the

violation of a federally protected right by (2) a person or official acting under the color of state law. *Anderson*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B. Eighth Amendment Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally

interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care. . . ." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

### 1. Analysis

Starting with the objective element, Defendants do not dispute that Reese's Hep C constitutes a "serious medical need." Rather, Defendants argue that summary judgment should be granted because Reese cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Reese's condition. Under the subjective element, there must be some evidence to

create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Reese's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this also requires that Reese "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, Defendants submitted authenticated evidence related to medical treatment Reese received related to his Hep C. According to Defendants' evidence, Reese was referred to the Chronic Disease Clinic and continuously monitored through medical observations and blood work. (*See* ECF Nos. 7, 27, 55-1, 58-1.) Specifically, Defendants' evidence shows that Reese told the NDOC that he was Hep C positive in 2013. (ECF Nos. 53, 55-1.) Reese requested treatment at this time but did not receive treatment because Reese did not show signs of liver disease. (*Id.*) In 2014, Reese tested positive for Hep C after a blood exam was conducted by the NDOC. (ECF Nos. 7, 27, 55-1.) The NDOC then placed Reese in the Chronic Disease Clinic for continued evaluation of Reese's Hep C. (ECF Nos. 7, 27, 53.) During this time, Reese did not receive treatment because Reese's APRI score did not qualify Reese for treatment. (ECF Nos. 53, 58-1.)[5]

Additionally, Defendants' evidence further shows that Faulkner was following criteria for treatment under Medical Directive 219. (ECF Nos. 53-2, 53-5, 53-7, 58-1.)[6] Defendants have also provided a declaration from current NDOC Medical Director, Michael Minev, stating, "Mr. Reese did not require drug intervention to treat his Hepatitis-C at the time of his complaint due to his scores and lack of symptoms." (ECF 58-1.)

---

[5] Defendants medical progress notes are largely illegible and exhibits which were cited to in the motion for summary judgment were missing or possibly mislabeled.

[6] ECF Nos. 53-2 and 53-7 relate to a 2020 version of Medical Directive 219.

Therefore, Defendants have submitted evidence that establishes Defendants affirmatively monitored Reese's Hep C and Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden then shifts to Reese to produce evidence which demonstrates that an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

Reese did not oppose the motion and did not submit any evidence in opposition to Defendants' motion. Therefore, Reese has failed to meet his burden on summary judgment to establish that any issue of fact exists as to the subjective element of the claims, i.e., that prison officials were deliberately indifferent to his medical needs, as the evidence demonstrates that Defendants did not deny, delay, or intentionally interfere with the treatment plan. *See Hallett*, 296 F.3d at 744. Moreover, to the extent that Reese's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Therefore, Reese has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly, Reese fails to meet his burden to show an issue of fact that defendants were deliberately indifferent to his needs because Reese has only shown that he disagrees between alternative courses of treatment, such as being given DAA as opposed to being monitored through the Chronic Disease Clinic. (*See* ECF Nos. 7, 27, 58-1.)

Accordingly, the Court recommends Defendants' motion for summary judgment be granted.[7]

---

[7] The Court does not address Defendants' exhaustion, personal participation, or qualified immunity arguments because the Court finds that Reese's constitutional claim fails on the merits.

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends Defendants' motion for summary judgment (ECF No. 53) be granted.

The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 53) be **GRANTED**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk of the Court **ENTER JUDGMENT** and **CLOSE** this case.

**DATED**: September 14, 2021

_____
**UNITED STATES MAGISTRATE JUDGE**